UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANOD DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO. 6:09-cr-250-Orl-31KRS

JOSE LUIS CRUZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, JOSE LUIS CRUZ, and the attorney for the defendant, Peter Kenny, Esquire, mutually agree as follows:

A.   **Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with fraud of identification documents, in violation of 18 U.S.C. § 1028(a)(1).

2.   Maximum Penalties

Count One carries a maximum sentence of 15 years imprisonment, a fine of $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100 to be due on the date of sentencing.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the

Defendant's Initials _____

AF Approval _____
Chief Approval _____

offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.   Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

**18 U.S.C. § 1028(a)(1)**

First:      The defendant knowingly produced an identification document, authentication feature, or false identification document;

Second:   When the defendant produced an identification document, authentication feature, or false identification document, the defendant did so without lawful authority; and,

Third:     The identification document, authentication feature, or false identification document was or appears to have been issued by or under the authority of the United States

4.   Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _____      2      Chief Approval _____

6. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees

Defendant's Initials ___S C___          3          Chief Approval ___NBA___

that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any,

Defendant's Initials _J C_                    4                    Chief Approval _NMH_

pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed

subsequent to sentencing, the government agrees to consider whether such

cooperation qualifies as "substantial assistance" in accordance with the policy of the

United States Attorney for the Middle District of Florida, warranting the filing of a motion

for a reduction of sentence within one year of the imposition of sentence pursuant to

Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination

as to whether "substantial assistance" has been provided or what type of motion related

thereto will be filed, if any, rests solely with the United States Attorney for the Middle

District of Florida, and the defendant agrees that defendant cannot and will not

challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-

incriminating information which the defendant may provide during the course of

defendant's cooperation and pursuant to this agreement shall be used in determining

the applicable sentencing guideline range, subject to the restrictions and limitations set

forth in USSG §1B1.8(b).

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant

authorities the nature and extent of defendant's cooperation and any other mitigating

circumstances indicative of the defendant's rehabilitative intent by assuming the

fundamental civic duty of reporting crime.  However, the defendant understands that the

government can make no representation that the Court will impose a lesser sentence

solely on account of, or in consideration of, such cooperation.

Defendant's Initials _S C_          5          Chief Approval _____

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges

Defendant's Initials _J C_                    6                    Chief Approval _MAH_

which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.     <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982 and 1028(b)(5), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  These items include 3 computers, a card printer, a combination

Defendant's Initials _____     7     Chief Approval _____

printer/scanner/copier, 2 digital cameras, identification software, photo paper, white plastic, adhesive spray, 7 counterfeit Mexican identification documents, 3 counterfeit Permanent Resident Cards, 2 counterfeit Social Security Cards, 6 counterfeit Mexican Birth Certificates, 2 Polaroid photos, business cards, miscellaneous scrap clippings, a cable modem, a genuine Birth Certificate, a genuine Social Security Card, and several copies of counterfeit identification documents. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States.

Defendant's Initials __J C__                8                Chief Approval __NWH__

These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Defendant's Initials _ ⅁ ⌐ _                    9                    Chief Approval _ ∧ℬℳ _

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Sentencing Information

Defendant's Initials ___J  C___          10          Chief Approval _/\\B/\\+____

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present

Defendant's Initials __J C__                 11                 Chief Approval __NW__

arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. Defendant's Waiver of Right to Appeal and
   Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §

Defendant's Initials  ヽ  C          12          Chief Approval  ᐱᴨᴘᴨ

3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6.  <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.  <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.  <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to

Defendant's Initials __J C__               13               Chief Approval __MBM__

be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

FACTS

With information provided by a reliable confidential informant (CI), the United States Secret Service (USSS) learned of an individual, Jose Luis Cruz, who was involved in the production and distribution of counterfeit identification documents to include Social Security Cards and Permanent Resident Cards.

Defendant's Initials ___J C___          14          Chief Approval ___ꝳꝳꝳ___

On July 7, 2008, the CI spoke with Cruz by phone and arranged to purchase identification documents from Cruz at his residence in Apopka, Florida, on July 9, 2008.

On July 9, 2008, the CI was equipped with a body wire in order to record conversation with Cruz. Prior to meeting with Cruz, the CI was searched by SA Michael Plitt for contraband. None was found. The CI was provided with $150 in pre-recorded U.S. currency and two passport style photos for the purchase of 1 counterfeit Social Security Card and 1 counterfeit Permanent Resident Card. At approximately 4:30PM, the CI called Cruz to confirm he was home and ready to conduct the previously arranged transaction. The CI was then observed by law enforcement driving directly to Cruz's residence, 1113 Timberline Road, Apopka, Florida. Once he/she arrived, the CI provided Cruz with $150 and 2 passport photos and as well as the information to be used on the counterfeit documents to include the name of Juan Rodriguez, and a date and place of birth. Cruz advised the CI that it would be 30 minutes before he could have the documents ready and that he would call the CI when they were done. The CI and Cruz departed the residence separately in their own vehicles. The CI was followed to a nearby gas station by agents. Cruz was driving a 1998 Ford Ranger, purple in color and was observed by law enforcement driving out of the neighborhood but he was lost by surveillance units shortly thereafter. The CI reported that during his/her conversations with Cruz, that Cruz indicated that he was obtaining the documents from a woman.

At approximately 5:50PM, the CI received a phone call from Cruz telling the CI that the identification documents were done and ready to be picked up. The CI was observed by law enforcement driving directly back to Cruz's residence at 1113

Defendant's Initials ___J C___          15          Chief Approval ___MbH___

Timberline Drive, Apopka, where he/she met with Cruz and retrieved the identification documents. The two discussed making additional purchases in the future. The CI departed the residence and was observed by law enforcement driving directly back to the debriefing site where he/she was checked for contraband. None was found.

The identification documents purchased by the CI were a Permanent Resident Card (Immigration Form I-551) in the name of Juan Rodriguez, A#xxx-xx-331 and a Social Security Card in the name of Juan Rodriguez, xxx-xx-2451.

On July 14, 2008, SA Kolarczyk spoke with Special Agent Mervin Miller, Social Security Administration, regarding the validity of the number assigned to the Social Security card obtained from Cruz. According to Miller, the number xxx-xx-2451 is unassigned to any person.

On July 14, 2008, Special Agent Scott Burnett advised a query of ICE databases for the number, xxx-xx-331, affixed to the Permanent Resident Card (Immigration Card I-551) and obtained by the CI from Cruz, revealed the number was assigned to an unrelated person.

On July 24, 2008, at approximately 6:30PM, under the agents' direction, the CI, equipped with a body wire, arrived at Cruz's residence, 1113 Timberline Road, Apopka, Florida, and provided him with $300 and two passport style photos to be used in the production of additional counterfeit identification documents. The CI also provided to Cruz additional information to be used on the counterfeit documents to include the names, dates and places of birth of Maria Jiminez and Javier Alvarado. Cruz advised the CI to return to his house in 1 hour to retrieve the documents. Cruz and the CI departed the residence at the same time in separate vehicles. A surveillance of Cruz

Defendant's Initials  ⁀ ⊂        16        Chief Approval  ⫴⫿

was established, and he was followed directly to 1921 Nicole Lee Circle where surveillance units watched Cruz enter apartment #1133.

At approximately 7:55PM, surveillance units witnessed Cruz exit the apartment, depart the area in his vehicle, and return directly to his residence at 1113 Timberline Drive, Apopka, Florida.

At approximately 8:20 PM, the CI arrived at Cruz's residence and retrieved the documents consisting of a Social Security Card in the name of Maria Jiminez bearing the number xxx-xx-1212, a Permanent Resident Card in the name of Maria Jiminez bearing the INS A#xxx-xxx-909, a Social Security Card in the name of Javier Alvarado bearing the number xxx-xx-4145, and a Permanent Resident Card in the name of Javier Alvarado bearing the INS A#xxx-xxx-330. The CI departed the scene and was followed by surveillance units directly back to the staging area.

On July 28, 2008, a records check conducted by ICE Special Agent Scott Burnett revealed that the Alien numbers used in the creation of the above listed Permanent Resident Cards, A#xxx-xxx-909 and A#xxx-xxx-330, are, in fact, assigned to unrelated persons.

On July 28, 2008, a records check conducted by Special Agent Mervin Miller, Social Security Administration revealed that the Social Security Numbers used in the creation of the above listed Social Security Cards, xxx-xx-1212 and xxx-xx-4145, are unassigned to any person.

With this information, a federal search warrant was obtained for the residence located at 1921 Nicole Lee Circle, Apt. 1133, Apopka, Florida.

Defendant's Initials __J C__          17          Chief Approval __MM__

On August 4, 2008, SA Kolarczyk learned from the leasing office at the Willow Lake apartments, that the residents of 1921 Nicole Lee Circle, Apt 1133, included Noemi Alvarez, a male, and two minor children.

On August 4, 2008, at approximately 6:40PM, under the direction of USSS, the CI, equipped with a body wire, arrived at Cruz's residence, 1113 Timberline Road, Apopka, Florida, and provided Cruz with $300 and two passport style photos to be used in the production of additional counterfeit identification documents. The CI also provided to Cruz additional information to be used on the counterfeit documents to include the names, places and dates of birth of Jose Alvarez and Sergio Hernandez. Cruz advised the CI to return to his house in 1 hour to retrieve the documents. The CI departed the residence first, and Cruz followed shortly thereafter.

Cruz was followed by surveillance units directly to 1921 Nicole Lee Circle where surveillance units watched Cruz approach apartment #1133 and then return to his vehicle in the parking lot. Cruz was then approached by agents of the Secret Service for questioning. At the same time, other agents executed the search warrant for apartment #1133.

A search of the residence resulted in numerous items of evidence to include 3 computers, a card printer, a combination printer/scanner/copier, 2 digital cameras, identification software, photo paper, white plastic, adhesive spray, 7 counterfeit Mexican identification documents, 3 counterfeit Permanent Resident Cards, 2 counterfeit Social Security Cards, 6 counterfeit Mexican Birth Certificates, 2 Polaroid photos, business cards, miscellaneous scrap clippings, a cable modem, a genuine Birth Certificate, a

Defendant's Initials _J C_          18          Chief Approval _MMH_

genuine Social Security Card, and several copies of counterfeit identification documents.

In a non-custodial interview of Cruz, Cruz stated that he met "Marcos", Noemi Alvarez's boyfriend, approximately 1 year ago at a Mexican grocery store on Children Street in Apopka where "Marcos" was passing out business cards advertising the sale of identification documents.  Shortly thereafter, Cruz called the number on the card in order to obtain a Social Security Card and Permanent Resident Card for his girlfriend. Cruz recalled going to another Apopka apartment near Alabama Street where "Marcos" and Noemi lived at the time to obtain the documents.  According to Cruz, he and "Marcos" waited outside while Noemi made the documents inside the apartment.  Cruz paid Noemi $100 for both cards.  Since that time, Cruz stated he has visited Noemi on ~~approximately 12~~ *other* occasions to obtain cards for other individuals.  Cruz charged people $150 for the cards and paid Noemi $100.  According to Cruz, he had no knowledge of the validity of the information people provide him for the cards.  Cruz was unwilling to provide a written statement due to his limited English writing skills so a statement was transcribed from his words and reviewed with Cruz in Spanish and English.

Cruz was also found in possession of the same $300 provided to him by the CI, as well as the 2 passport style photos to be used for the documents.

Three counterfeit Permanent Resident Cards with the following information were located during the search warrant:

Carlos Guevra Munoz   A#xxx-xxx-331

Federico Rivas          A#xxx-xxx-731

Rene Villalbazo         A#xxx-xxx-637

Defendant's Initials ___J C___          19          Chief Approval ___ฏ๒ฝ___

On August 8, 2008, a records check conducted by Special Agent Anthony Ojeda, U.S. Immigration and Customs Enforcement revealed that the Alien numbers affixed to the above listed Permanent Resident Cards, A#xxx-xxx-331, A#xxx-xxx-731 and A#xxx-xxx-637, are, in fact, assigned to unrelated persons.

Two counterfeit Social Security Cards with the following information were located during the search warrant:

Rene Villalbazo          xxx-xx-5623

Rene Villalbazo          xxx-xx-0098

On August 7, 2008, a records check conducted by Special Agent Mervin Miller, Social Security Administration revealed the Social Security Numbers affixed to the above listed Social Security Cards, xxx-xx-5623 and xxx-xx-0098, are not assigned to Rene Villalbazo.

10.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials ___J C___          20          Chief Approval ___Tbu___

11.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _____23rd_____ day of February, 2010.

A. BRIAN ALBRITTON
United States Attorney


_____        By:   _____
JOSE LUIS CRUZ                                                David L. Haas
Defendant                                                         Assistant United States Attorney


_____              _____
Peter Kenny                                                   Roger B. Handberg, III
Attorney for Defendant                                 Assistant United States Attorney
                                                                      Chief, Orlando Division


Defendant's Initials _____JC_____            21            Chief Approval _____